In re Helen SULLIVAN, Debtor.

Barbara MacPhee, Plaintiff,

v.

Helen Sullivan, Defendant.

Bankruptcy No. 01–11612–MWV.
Adversary No. 01–1150–MWV.

United States Bankruptcy Court, D. New Hampshire.

July 31, 2002.

---

Elizabeth A. Soule, South Middlesex Legal Services, Framingham, MA, Martin K. Glennon, Manchester, NH, for plaintiff.

Michael J. Scott, Scott & Scott, P.A., Londonderry, NH, for defendant.

## *MEMORANDUM OPINION*

MARK W. VAUGHN, Chief Judge.

The Court has before it the Complaint of Barbara MacPhee ("Plaintiff") that seeks a determination that any potential judgment rendered by the Massachusetts Middlesex County Superior Court ("Superior Court") against Helen Sullivan ("Defendant"/"Debtor") is nondischargeable pursuant to section 523(a)(2)(A) of Title 11 of the United States Code.[1] At a hearing held on May 23, 2002, the Court heard the testimony of the Plaintiff and Debtor and thereafter took the matter under submission. Based upon the record before it and for the reasons set out below, the Court finds that the Plaintiff has not met her

---

1. Unless otherwise noted, all section references hereinafter are to Title 11 of the United States Code.

burden under § 523(a)(2)(A). Consequently, the Court denies the Plaintiff the relief sought in her complaint.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## FACTS

The Plaintiff and Debtor met in 1996, through the Debtor's brother, Michael Patrick Sullivan. Michael Sullivan was a friend of the Plaintiff's son, who passed away, and the realtor who sold the Plaintiff's prior residence in Newton, Massachusetts.[2] The testimony of the parties and evidence submitted in the form of letters written by the Plaintiff to the Debtor and to Michael Sullivan indicate that the Plaintiff had a close relationship with Michael Sullivan, but did not know the Debtor very well. See Pl.Ex. 10 and Def.Ex. 102. Despite knowing the Debtor for only a short period of time, on August 12, 1996, the Plaintiff signed a deed conveying her interest in her residence located at 20 Lillian Road, Framingham, Massachusetts (the "Property") to the Debtor for one dollar. See Pl.Ex. 1. On September 30, 1996, the Debtor took out a mortgage in the amount of $84,000 and subsequently refinanced the mortgage on the Property twice, on July 31, 1998 and August 31, 1999. The amount of the last refinance was $112,500. The Debtor provided the Plaintiff with a written statement dated September 1, 1997, in which she indicated that although she held the deed and mortgage, the Plaintiff truly owns and occupies Property. See Pl.Ex. 5. The Debtor also noted she would reconvey the Property "as soon as legally possible." Id.

In July 2000, the Plaintiff commenced a lawsuit in Superior Court against the Debtor and Michael Sullivan, seeking the reconveyance of the Property to her free of the liens placed on it by the Debtor, among other requests for relief. See Pl. Ex. 8. The Superior Court entered an injunctive order by which the Debtor was to keep the mortgage payments current on the Property.

Subsequently, the Defendant filed under Chapter 7 of the Code on May 10, 2001. As a result of the filing, the Superior Court litigation was stayed. In her schedules, the Defendant listed the pending civil proceedings against her and Option One Mortgage Corporation as holding a claim of $111,993.45 secured by the Property. The Debtor received a discharge on August 22, 2001. The Debtor has not made any mortgage payments since March 2001. On September 18, 2000, Option One sought and was granted relief from the automatic stay by this Court. Foreclosure proceedings on the Property were scheduled for July 30, 2002.

The Plaintiff filed the instant adversary proceeding on August 14, 2001 and an amended complaint on November 23, 2001. The Court granted Plaintiff's request for relief from the automatic stay on September 18, 2001 to pursue the requests for constructive trust and injunctive relief against Option One, but denied relief to collect any funds from the Debtor until the present dischargeability matter was determined by the Court. See Bk.Doc. 31.[3]

---

**2.** At the May 23, 2002 hearing, neither party called Michael Patrick Sullivan as a witness.

**3.** Upon request of the Plaintiff, the Court clarified this order on January 19, 2002, indicat-

ing that relief was also granted to pursue the fraud and promissory estoppel counts in the Superior Court litigation. See Bk.Doc. 35.

Further, the Court denied the Defendant's motion to dismiss for failure to state a claim upon which relief can be granted on January 16, 2002. *See* Adv.Doc. 15.

### DISCUSSION

■ Exceptions to discharge under § 523(a) are to be narrowly construed in favor of the debtor. *See McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 (1st Cir.2001); *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir.1997). "By seeking discharge, however, [the debtor] places the rectitude of his prior dealings squarely in issue, for as the Court has noted, the Act limits the opportunity [for discharge] to the 'honest but unfortunate debtor.'" *Spigel*, 260 F.3d at 32 quoting *Brown v. Felsen*, 442 U.S. 127, 128, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) (citations omitted). Yet, the Code specifies the kinds of debts that are deemed nondischargeable rather than "condition[ing] discharge upon a generalized determination of the moral character of the debtor." *Spigel*, 260 F.3d at 32. Further, creditors must prove by a preponderance of the evidence that their claims come squarely within the exception to discharge. *See Grogan v. Garner*, 498 U.S. 279, 283, 111 S.Ct. 654, 657, 112 L.Ed.2d 755 (1991); *Spigel*, 260 F.3d at 32; *Palmacci*, 121 F.3d at 787.

The Plaintiff brings her complaint pursuant to § 523(a)(2)(A), which states as follows:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's financial condition.

11 U.S.C. § 523(a)(2)(A).

■ In order to establish that a debt is nondischargeable because it was obtained by "false pretenses, a false representation, or actual fraud," the Plaintiff must show that: 1) the Debtor made a knowingly false representation or made a representation in reckless disregard of the truth, 2) the Debtor intended to deceive, 3) the Debtor intended to induce the Plaintiff to rely upon the false statement, 4) the Plaintiff actually relied upon the misrepresentation, 5) the Plaintiff's reliance was justifiable, and 6) the Plaintiff's reliance upon the false statement caused damage. *Spigel*, 260 F.3d at 32 (citing *Palmacci*, 121 F.3d at 786; *Century 21 Balfour Real Estate v. Menna (In re Menna)*, 16 F.3d 7, 10 (1st Cir.1994)).

■ In the instant case, the "property . . . obtained" would be the Plaintiff's house. However, the evidence supports a finding that she voluntarily deeded the Property to the Debtor, knowing that it would be used as collateral to obtain a loan. Thus, the misrepresentation relied on by the Plaintiff must be the promise to reconvey the Property.

■ In her amended complaint, the Plaintiff alleges that the Debtor misrepresented that she would sign back the Property to the Plaintiff once the loan was obtained and that the Plaintiff reasonably relied on the promise. As Collier's states, "[t]he failure to perform a mere promise is not sufficient to make a debt nondischargeable, even if there is no excuse for the subsequent breach. A debtor's statement of future intention is not necessarily a misrepresentation if intervening events cause the debtor's future actions to deviate from previously expressed intentions." 4 *Collier on Bankruptcy* ¶ 523.08[1][d]. Al-

though the facts surrounding the conveyance are disputed, the Plaintiff has not proven by a preponderance of the evidence that the Debtor made a knowingly false representation or one in reckless disregard of the truth for purposes of § 523(a)(2)(A).

The parties gave differing accounts as to the purpose of the conveyance. The Plaintiff testified that the Debtor requested the Plaintiff sign over her Property so that the Debtor may use it as collateral to repay her debts. Conversely, the Debtor testified that the Plaintiff wanted to engage the Debtor in this transaction so that the Debtor could obtain a loan to help Michael Sullivan, who was not creditworthy, in an alleged real estate venture. But neither party disputes that the Debtor promised to reconvey the property back. The Debtor does argue, however, that circumstances changed as to the reconveyance when the funds that were to come from her brother's real estate venture never materialized. Instead, unable to make payments, the Debtor refinanced the original mortgage to stall foreclosure.

The evidence appears to support the Debtor's version of the transaction. In letters written by the Plaintiff to the Debtor, she states "my house was to get $7,000 as knew Michael needed to open office ..." Pl.Ex. 10(e). Further, the Plaintiff noted that she told Michael Sullivan that the Debtor got involved only after he "pleaded" for her help and that Debtor's involvement was a "big mistake" on the Debtor and Plaintiff's parts. Def.Ex. 104. Further, in a correspondence to the Debtor dated July 23, 1996, the Plaintiff thanks the Debtor for "helping out Michael Patrick" and hopes that the Debtor liked the house, proceeding to list various improvements she expected Michael Sullivan would be making on the Property. Def.Ex. 101. Additionally, the Plaintiff references the conveyance as being a "deal," indicating that she was "paying bills that were not in this deal" for taxes and repairs on the property. Pl.Ex. 10(i). Since the Court finds that the Debtor did not make a false misrepresentation to the Plaintiff because she did intend to reconvey the property, the first prong of the nondischargeability test under § 523(a)(2)(A) was not satisfied.

As a final note, the Court recognizes the unfortunate circumstances of this case. However, the burden upon the plaintiff in a nondischargeability action is a heavy one and the Plaintiff was not able to meet it.

### CONCLUSION

For the reasons outlined above, this Court denies the Plaintiff's complaint for relief pursuant to § 523(a)(2)(A). This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will enter a separate final judgment consistent with this opinion.