# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 08-6028

In re:

Dwayne Shearder Eccles and
Priska Jolanka Eccles,

Debtors.

Larry J. Fee and Brenda Fee,

Plaintiffs - Appellees.

v.

Dwayne Shearder Eccles and
Priska Jolanka Eccles,

Defendants - Appellants.

Appeal from the United States
Bankruptcy Court for the
Western District of Missouri

Submitted May 21, 2009
Filed: June 8, 2009

Before KRESSEL, Chief Judge, MAHONEY, and SALADINO, Bankruptcy Judges

MAHONEY, Bankruptcy Judge.

Debtors/Appellants appeal from the judgment entered by the bankruptcy court[1] which determined that a debt owed to the appellees is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) as having been incurred as a result of actual fraud. We affirm.

## I. FACTUAL BACKGROUND

The Debtors, Dwayne and Priska Eccles, moved to southwest Missouri from California in December 2005. Prior to moving to Missouri, they purchased two pieces of property in the Branson area. They moved into the house located at 23 Lake Point Lane, Galena, Missouri (the "Lake Point property"), and rented out the property in Kirbyville, Missouri. The Debtors met Larry and Brenda Fee shortly after they moved to Missouri and the two couples became friends and had similar interests concerning real estate. The Fees owned several properties and the Debtors had come to Missouri to purchase houses, renovate them and resell them. They had taken a seminar in real estate investing and, at the time they moved to Missouri, they owned property in Kansas, Las Vegas, and Missouri.

In May 2006, the Debtors bought six houses located next to one another in Reeds Spring, Missouri. They paid a down payment of $20,000 on the sale price of $185,000 and the seller financed the balance. Priska Eccles testified that the Debtors bought the Reeds Spring properties for the purposes of fixing up the dilapidated houses on the properties and reselling them. Based on an estimate the Debtors obtained from the contractor they hoped to employ to help renovate the properties, the Debtors estimated it would take approximately $120,000 to sufficiently renovate the properties for resale.

---

[1]The Honorable Jerry Venters, United States Bankruptcy Judge for the Western District of Missouri.

When the Debtors arrived in Missouri in 2005, they had significant funds representing the proceeds of the home they had sold in California. They used those proceeds for living expenses during the winter of 2005-2006, but by the time they purchased the Reeds Spring properties they had insufficient funds available to pay for the material and labor necessary to renovate the properties. Neither Mr. nor Mrs. Eccles obtained full time employment to cover their living expenses.

When the Eccles began looking for financing, the Fees suggested they contact Pamela Barry, a longtime friend of and mortgage broker for the Fees. Ms. Barry was unable to find conventional financing and, at Ms. Barry's suggestion, the Debtors entered into discussions with the Fees for a loan to fund the project.

The Debtors had estimated that the total project would cost $120,000 and anticipated it would take approximately one month and $20,000 to renovate each house. Prior to agreeing to loan them money, the Fees insisted on an appraisal to assure themselves that, after renovation, the houses would sell for enough to pay off the seller financing and repay the Fees their loan amounts plus interest. Once the Fees were satisfied that the project was feasible, the Debtors executed six six-month promissory notes for $20,000. Each note was secured by a separate deed of trust on one of the houses to be renovated. The notes were executed on November 6, 2006, and matured on May 31, 2007.

Rather than restricting the use of the funds to material and labor expenditures on the project, the Debtors immediately began using the proceeds for general living expenses, including health insurance, mortgage payments on other properties, automobile loans, and child care. On the date the Debtors received the loan proceeds – $114,563.86 after closing costs – the Debtors had approximately $6,500 remaining from the California house proceeds in the bank and no other income. By the end of November 2006, the Debtors had spent more than $31,000 of which no more than $13,000 was used on the project. From the end of November 2006 to March 2007, the

Debtors devoted little or no money to the project, other than approximately $1,000 spent on carpeting in March. At a trial, the Debtors testified that the project had to be put on hold because their contractor broke his toe. Even though the project was placed on hold, the Debtors continued spending the loan proceeds. In December 2006, they spent $42,000 on toys for their children, eating out, groceries, more mortgage payments, a new roof on the Lake Point property, a down payment on a new home located at 330 Meadow Ridge North in Branson, Missouri, and furniture for their new home. In January 2007, the Debtors spent another $19,000, including $1,679 on a large-screen television, and $1,584 on furniture for the Meadow Ridge property. They spent about $19,000 in February, and by March the Debtors had essentially run out of money.

At the end of April, the Debtors told the Fees that they could not finish the project and could not pay the money they owed the Fees. The Fees then sued in state court alleging fraud and seeking the imposition of a constructive trust on the other properties owned by the Debtors. The Debtors filed for protection under Chapter 7 of the Bankruptcy Code on September 29, 2007.

## II. STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. First Nat'l Bank of Olathe v. Pontow (In re Pontow), 111 F.3d 604, 609 (8th Cir. 1997); Sholdan v. Dietz (In re Sholdan), 108 F.3d 886, 888 (8th Cir. 1997); Fed. R. Bankr. P. 8013. The determination of whether a requisite element of a claim under § 523(a)(2)(A) is present is a factual determination which is reviewed for clear error. Lindau v. Nelson (In re Nelson), 357 B.R. 508, 512 (B.A.P. 8th Cir. 2006); Merchants Nat'l Bank of Winona v. Moen (In re Moen), 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999). We will not set aside the bankruptcy court's findings of fact unless those findings are clearly erroneous. Fed. R. Bankr. P. 8013. A finding is clearly erroneous if, after examining the entire record,

4

we are left with a definite and firm conviction that the bankruptcy court has made a mistake. Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985). Also, when reviewing the evidentiary record, we will give due deference to the bankruptcy court's opportunity to judge the credibility of witnesses. Fed. R. Bankr. P. 8013.

## III. DISCUSSION

In the bankruptcy court, the Fees filed an adversary proceeding requesting a judgment of non-dischargeability under 11 U.S.C. § 523(a)(2)(A) based upon their contention that the debt was incurred through actual fraud. Section 523(a)(2)(A) excepts from discharge "any debt or money, property, services, or an extension, or renewal, or refinancing of credit, to the extent obtained by — (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition." To prove actual fraud, a creditor must prove the following by a preponderance of the evidence: (1) the debtor made a false representation; (2) at the time the representation was made the debtor knew it was false; (3) the debtor subjectively intended to deceive the creditor at the time he made the representation; (4) the creditor justifiably relied upon the representation; and (5) the creditor was damaged. Universal Bank, N.A. v. Grause (In re Grause), 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000) (citing Thul v. Ophaug (In re Ophaug), 827 F.2d 340, 342 n.1 (8th Cir. 1987), as supplemented by Field v. Mans, 516 U.S. 59 (1995)); Blue Skies, Inc. v. Preece (In re Preece), 367 B.R. 647, 652 (B.A.P. 8th Cir. 2007).

The Debtors admitted at trial that the primary purpose of the loan was to pay for the renovation of the Reeds Spring properties. However, they asserted at trial that renovating the properties was not the only purpose of the loan and that they never represented that they would not use the loan proceeds for any other purpose.

The bankruptcy court found as a fact that the Debtors made a false representation when they specifically requested the use of the loan proceeds to

5

renovate the houses, but omitted to inform the Fees that they intended to use the funds for other things, including living expenses. Silence regarding a material fact can constitute a false representation actionable under § 523(a)(2)(A). Caspers v. Van Horne (In re Van Horne), 823 F.2d 1285, 1288 (8th Cir. 1987). In addition, the court decided this issue on the credibility of the witnesses. The Fees testified that it was clear from their conversation with the Debtors that the loan proceeds were going to be used solely to renovate the Reeds Spring properties.

Deference is to be given to the credibility findings of the trial court. The factual finding of false representation is not clearly erroneous.

Similarly, the bankruptcy court made factual findings on the second and third elements of § 523(a)(2)(A) that the Eccles intended all along to use the loan proceeds for purposes other than renovation of the Reeds Spring properties and that they intended to deceive the Fees so that they could get the money to use for their own purposes. Such a factual finding is not clearly erroneous.

The bankruptcy court then made a factual finding that the Fees justifiably relied on the Debtors' representation that the loan proceeds would be used solely for the renovation project. The reliance prong of § 523(a)(2)(A) does not require the creditor to prove that its reliance on the Debtor's misrepresentation was reasonable; rather, the creditor's reliance need only be "justifiable." Field v. Mans, 516 U.S. at 74-75. Justifiable reliance does not require an investigation, even if the failure to investigate would be considered negligent and the falsity of the representation would be readily discovered upon investigation. Mans, 516 U.S. at 70-71. Applying that standard, the bankruptcy court found that the Fees justifiably relied on the Debtors' representation that the loan proceeds were to be used solely for the renovation project.

The bankruptcy court made such a finding on the testimony of the Fees that they did not suspect the Debtors needed the funds for their daily living and that they

6

believed Dwayne Eccles either had, or hoped to have, full time employment with United Parcel Service. The factual finding that the Fees justifiably relied on the Debtors' representation that the loan proceeds would be used solely for the renovation project is not clearly erroneous.

The bankruptcy court made a factual finding that the Fees were damaged by the fraudulent misrepresentation. Support for such a finding is in the fact that $120,000 was loaned and very little was paid back. This factual finding is not clearly erroneous.

## CONCLUSION

The bankruptcy court's findings of fact that the Debtors obtained monies from the Fees through actual fraud is supported by the evidence and is not clearly erroneous. The judgment of the bankruptcy court is affirmed.

---