Peter J. WOODFORD, Debtor.

Blacksmith Investments, Inc.,
Plaintiff–Appellant,

v.

Peter J. Woodford, Defendant–Appellee.

BAP No. MB 09–021.
Bankruptcy No. 06–10437–JNF.
Adversary No. 06–01233–JNF.

United States Bankruptcy Appellate Panel
for the First Circuit.

Nov. 23, 2009.

David B. Madoff, Esq., on brief for Plaintiff–Appellant.

Jeffrey J. Cymrot, Esq., Boston, MA, on brief for Defendant–Appellee.

Before HAINES, LAMOUTTE, and VAUGHN, United States Bankruptcy Appellate Panel Judges.

VAUGHN, Bankruptcy Appellate Panel Judge.

Blacksmith Investments, LLC ("Blacksmith"), appeals from the bankruptcy court's order (the "Order") granting judgment in favor of Peter J. Woodford (the "Debtor") on Blacksmith's complaint objecting to the dischargeability of its claim against the Debtor.[1]

---

1. In the same order, the bankruptcy court also denied Blacksmith's Objection to Debtor's Exemption of Retirement Annuity. However, Blacksmith did not raise in its statement of issues on appeal nor did it brief any issues regarding that decision, and, therefore, the issue is waived. *See Tower v. Leslie–Brown,* 326 F.3d 290, 299 (1st Cir.2003) ("[W]e have made it abundantly clear that failure to brief an argument does, in fact, constitute a waiver for purposes of appeal."); *Garcia–Ayala v. Lederle Parenterals, Inc.,* 212 F.3d 638, 645 (1st Cir.2000) (holding that failure to brief an argument constitutes waiver); *MB Joma, Inc. v. Nieves (In re MB Joma, Inc.),* 403 B.R. 146, 150 (1st Cir. BAP 2009) (failure to either identify certain issue as an issue on appeal or

Blacksmith argues that the bankruptcy court erred as a matter of law: (1) in holding that an "actual fraudulent transfer" does not constitute "actual fraud" for dischargeability purposes under § 523(a)(2)(A);[2] and (2) in holding that an agreement for judgment entered in a prior state court action did not have res judicata effect in a subsequent adversary proceeding seeking to hold the debt evidenced by the agreement for judgment nondischargeable pursuant to § 523(a)(2)(A). For the reasons set forth below, we **AFFIRM**.

## BACKGROUND

### The Parties

Blacksmith is a limited liability company wholly owned and managed by Robert Saraceno ("Saraceno"). This action stems from the sale of Saraceno's business to his former employee, Bernard MacInnis, Jr. ("MacInnis"), and the subsequent transfer of the business assets by MacInnis to the Debtor, alleged by Blacksmith to be part of a conspiracy to avoid repaying Blacksmith, Saraceno and other creditors of MacInnis' business, Boston Steel and Precast Erectors, Inc. ("BSPE"). The Debtor was a former employee of BSPE.

### The Underlying Debt

BSPE was in the business of erecting large scale buildings and structures. MacInnis served as BSPE's president, treasurer and sole director; his wife, Kathleen MacInnis, served as the assistant treasurer. On January 15, 2002, BSPE purchased certain assets, including tools and equipment, from Boston Steel Erectors, Inc. ("BSE"), and thereafter entered into a consulting contract with Saraceno, BSE's president and treasurer. Saraceno testified that BSPE granted him a security interest in all assets of BSPE.

On January 29, 2002, BSE, BSPE, and others executed and delivered a promissory note (the "Note") in the amount of $1,200,000 to Citizens Bank of Massachusetts ("Citizens"). Saraceno and MacInnis executed the Note on behalf of BSE and BSPE respectively, and also executed personal guaranties. The Note was secured by, among other things, a lien on all of BSPE's assets. By early 2003, BSPE was facing serious financial difficulties, and in August, 2003, it stopped making payments to Citizens under the Note and eventually ceased operations.

On August 14, 2003, Citizens delivered to BSPE a written demand for payment due to the default on the Note. It also demanded payment from Saraceno on his guaranty. Blacksmith paid the full balance due under the Note, and, in consideration for that payment, Citizens executed an allonge pursuant to which it assigned to Blacksmith all its rights under the Note.

### Basis of Claims against the Debtor

The Debtor is a union iron worker who had been an employee of BSE and became an employee of BSPE in 2002. He was a foreman whose duties included estimating jobs; he used a computer program owned by BSPE for that purpose. Facing unemployment due to BSPE's troubled financial state, the Debtor was receptive to a proposition by MacInnis to start a new company. On April 11, 2003, with MacInnis' assistance, the Debtor incorporated MacSteel Erectors, Inc. ("MacSteel"), of which the

to brief that issue constituted waiver of any argument on the issue).

**2.** Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8, 119 Stat. 23, 11 U.S.C. § 101, *et seq.*

Debtor was the sole officer and director, and MacInnis was an employee. MacInnis' assistance included helping the Debtor obtain a lawyer to incorporate MacSteel, and helping him open a company bank account at Sovereign Bank, for which both the Debtor and MacInnis had check signing authority.

MacSteel appropriated tools, equipment, office files, computers and computer programs (including billing software) owned by BSPE for no consideration. MacSteel used BSPE's Saugus, Massachusetts office space before moving its operations to the basement of MacInnis' home, where it operated rent-free, and in 2004 moved its operations to office space in Malden, Massachusetts. MacSteel also employed BSPE's former office assistant "under the table." Additionally, the Debtor caused MacSteel to complete one of BSPE's contracts without rebidding the job. MacSteel paid both the Debtor and MacInnis a salary of $130,000.00. To fund MacSteel's operations, the Debtor borrowed money from MacInnis and borrowed $50,000 from his annuity with the Iron Workers District Council of New England ("Annuity") by representing that the funds would be used to purchase a residence. The Debtor repaid the loan against his Annuity in full in 2005.

### The State Court Action

On or about February 23, 2004, Blacksmith filed suit in Suffolk Superior Court (the "state court action") seeking to recover approximately $387,000 from BSPE, MacInnis and others under the Note and guaranty, and from MacSteel and the Debtor under theories of successor liability and fraudulent transfer, including actual fraud.[3] Blacksmith brought the state court action in its capacity as assignee of Citizens.

On or about September 30, 2005, Blacksmith, Saraceno, MacSteel, and the Debtor entered into a settlement agreement and an agreement for judgment, pursuant to which the Debtor and MacSteel agreed to entry of a judgment against them in the amount of $200,000 on Counts II, III, IV, and V of the complaint. The settlement agreement provided that if the Debtor paid Blacksmith $100,000 within 60 days, Blacksmith would return to the Debtor and MacSteel a copy of the agreement for judgment marked "Satisfied in Full," and the Debtor and MacSteel would have no further obligations to Blacksmith. Because the agreement for judgment called for a separate and final judgment to be entered against the Debtor under Mass. R. Civ. P. 54(b), the Superior Court held a hearing, signed the agreement for judgment on October 6, 2005, and entered it as a separate judgment on October 11, 2005. The Debtor did not satisfy the agreement for judgment, and, on March 1, 2006, he filed a chapter 13 petition.

### The Adversary Proceeding

On April 18, 2006, Blacksmith filed an adversary complaint seeking to except the $200,000 debt evidenced by the agreement for judgment from discharge under § 523(a)(2)(A), alleging, among other things, that the Debtor had conspired with MacInnis to create MacSteel and to trans-

---

**3.** Blacksmith's Verified Complaint set forth the following counts: Count I: Action on the Note; Count II: Successor Liability—MacSteel; Count III: Actual Fraudulent Transfer—MacSteel (citing Mass. Gen. Laws ch. 109A, § 5(a)(1)); Count IV: Constructive Fraudulent Transfer—MacSteel (citing Mass. Gen. Laws ch. 109A, § 6(a)); Count V: Personal Liability for Fraudulent Transfers—Woodford (citing Mass. Gen. Laws ch. 109A, §§ 5(a)(1) and 6(a)); Count VI: Actual Fraudulent Transfer—Kathleen MacInnis; Count VII—Constructive Fraudulent Transfer—Kathleen MacInnis; Count VII—Turnover of Collateral—MacSteel; and Count IX: Preliminary Injunction—MacSteel.

fer all of BSPE's assets to MacSteel to avoid paying BSPE's creditors. Blacksmith filed a motion for summary judgment, arguing that there were no disputed material issues of fact and that it was entitled to judgment as a matter of law as the Debtor was collaterally estopped from relitigating the issue of whether the debt evidenced by the agreement for judgment was nondischargeable. The Debtor opposed the motion. The bankruptcy court held a hearing on May 8, 2007, and took the matter under advisement. On June 19, 2007, the bankruptcy court entered an order concluding that the Debtor was not collaterally estopped from litigating the issue of whether the debt evidenced by the agreement for judgment was nondischargeable. In so holding, the bankruptcy court found that "it is ambiguous as to whether the transfers for which the Debtor agreed he was culpable as the sole officer and director of MacSteel were made with actual intent to defraud or were constructively fraudulent." Noting that "the fraud exception to the dischargeability of debts does not reach constructive frauds, only actual ones ...," the bankruptcy court denied summary judgment.

On January 13, 2009, the bankruptcy court held a trial, at which two witnesses testified and seven exhibits were introduced into evidence. Following the trial, the parties submitted post-trial briefs as ordered by the court. On April 13, 2009, the bankruptcy court issued the Order which, among other things, entered judgment in favor of the Debtor on Count I of the complaint.[4] Blacksmith appealed.

### JURISDICTION

■ Before addressing the merits of an appeal, the Panel must determine that it has jurisdiction, even if the issue is not raised by the litigants. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724 (1st Cir. BAP 1998). The Panel has jurisdiction to hear appeals from: (1) final judgments, orders and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," *id.* at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). Generally, a bankruptcy court's judgment regarding the nondischargeability of a debtor's obligations under § 523(a)(2) is a final appealable order. *See Aoki v. Atto Corp. (In re Aoki)*, 323 B.R. 803, 811 (1st Cir. BAP 2005); *Werthen v. Werthen (In re Werthen)*, 282 B.R. 553, 555–56 (1st Cir. BAP 2002), *aff'd*, 329 F.3d 269 (1st Cir.2003).

### STANDARD OF REVIEW

■ The Panel reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *See TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719 n. 8 (1st Cir.1994). A bankruptcy court's determination of whether a requisite element of a nondischargeability claim under § 523(a)(2)(A) is present is a factual determination which is reviewed for clear error.

4. The bankruptcy court's decision is published. *See Blacksmith Invs., LLC v. Woodford (In re Woodford)*, 403 B.R. 177 (Bankr.D.Mass. 2009).

*Fee v. Eccles (In re Eccles)*, 407 B.R. 338 (8th Cir. BAP 2009); *see also In re Aoki*, 323 B.R. at 811 (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 785 (1st Cir.1997)) (questions of fraudulent intent, a requisite element of a dischargeability dispute under § 523(a)(2)(A), are questions of fact that should not be overturned unless clearly erroneous). The applicability of the res judicata or collateral estoppel doctrine presents a question of law requiring *de novo* review. *See R.G. Fin. Corp. v. Vergara–Nunez*, 446 F.3d 178, 182 (1st Cir. 2006); *Torres Martinez v. Arce (In re Torres Martinez)*, 397 B.R. 158 (1st Cir. BAP 2008).

### DISCUSSION

■ Section 523(a)(2)(A) excepts from discharge a debt of an individual debtor "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). In order to establish that a debt is nondischargeable under this section, a creditor must prove actual fraud, rather than mere fraud implied in law. *See* Lawrence P. King, 3 *Collier on Bankruptcy* ¶ 523.08[1] (15th ed. rev.2002). In seeking to demonstrate that the debt created by the agreement for judgment is nondischargeable, Blacksmith argues that the agreement for judgment, in which the Debtor allegedly agreed that he is liable in the amount of $200,000 on a count alleging an actual fraudulent transfer, is entitled to preclusive effect under the principles of res judicata and collateral estoppel.

■ It is well established that preclusion principles apply in most actions in the bankruptcy court, including adversary proceedings under § 523(a) to except debts from discharge. *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 33 (1st Cir. 2001) (citing *FDIC v. Shearson–American Express, Inc.*, 996 F.2d 493, 497 (1st Cir. 1993); *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)); *see also HSSM # 7 Ltd. Pshp. v. Bilzerian (In re Bilzerian)*, 100 F.3d 886, 892 (11th Cir.1996). The fact that bankruptcy courts have "exclusive jurisdiction over dischargeability issues does not alter this rule." *See Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 318 (6th Cir.1997). While the bankruptcy court must make its own determination regarding the dischargeability of the debt, that determination may be governed by factual issues that were actually and necessarily decided by the state court. *Vogel v. Kalita (In re Kalita)*, 202 B.R. 889, 894 (Bankr. W.D.Mich.1996) (citing *Grogan*, 498 U.S. at 284 n. 11, 111 S.Ct. 654). State law dictates whether a prior state court judgment should be afforded preclusive effect. *Spigel*, 260 F.3d at 33 (citing *New Hampshire Motor Transp. Ass'n v. Town of Plaistow*, 67 F.3d 326, 328 (1st Cir.1995)); *see also Rutanen v. Baylis (In re Baylis)*, 217 F.3d 66, 70–71 (1st Cir.2000).

■ Under Massachusetts law, the term "res judicata" includes both claim preclusion and issue preclusion. *Kobrin v. Bd. of Registration in Medicine*, 444 Mass. 837, 832 N.E.2d 628, 634 (2005) (citing *Heacock v. Heacock*, 402 Mass. 21, 520 N.E.2d 151, 152 n. 2 (1988) (explaining that "res judicata" is the generic term for various doctrines by which a judgment in one action has a binding effect in another)). "Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action." *Id.* (citations omitted). Claim preclusion requires three elements: (1) the identity or privity of the parties to the present and prior actions;

(2) identity of the cause of action; and (3) prior final judgment on the merits. *Id.* (citing *DaLuz v. Dep't of Corr.*, 434 Mass. 40, 746 N.E.2d 501 (2001)). Because claim preclusion forecloses all matters which might have been litigated previously, some courts have concluded that it does not apply in a denial of discharge proceeding. *See Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).[5] Therefore, this case involves issue preclusion, which is usually referred to as collateral estoppel. *See Treglia v. MacDonald*, 430 Mass. 237, 717 N.E.2d 249, 253 n. 6 (1999) ("Most courts agree that under the full faith and credit statute, 28 U.S.C. § 1738 (1994), the preclusive effect of a State court judgment in a subsequent nondischargeability proceeding under Federal bankruptcy law is governed by the collateral estoppel law of the State from which the judgment is rendered....").

▮▮▮▮▮ The doctrine of collateral estoppel "prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies." *Kobrin*, 832 N.E.2d at 634 (quoting *Heacock v. Heacock*, 402 Mass. 21, 520 N.E.2d 151, 152 (1988)); *see also Jarosz v. Palmer*, 436 Mass. 526, 766 N.E.2d 482, 487 (2002). To apply the doctrine, the court must determine that: (1) there was a final judgment on the merits in the prior litigation; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior litigation; and (3) the issue in the prior litigation was identical to the issue in the current litigation. *Kobrin*, 832 N.E.2d at 634 (citing *Tuper v. North Adams Ambulance Serv., Inc.*, 428 Mass.

132, 697 N.E.2d 983 (1998)). In addition, the issue in the prior litigation must have been essential to the earlier judgment. *Id.; see also Alba v. Raytheon Co.*, 441 Mass. 836, 809 N.E.2d 516, 521 (2004) (citations omitted). Issue preclusion can be used only to prevent relitigation of issues actually litigated in the prior action. *Kobrin*, 832 N.E.2d at 634. The material issue in this case arises out of an agreement for judgment, and therefore, there is no question that it was not actually litigated in the sense of a hearing or trial.

▮▮▮▮ However, in Massachusetts, the doctrine of issue preclusion has been extended, in some situations, to consent judgments and agreements for judgment. In such situations, an agreement for judgment can be "binding and conclusive upon the parties as if it had been entered after a trial and a determination of the issues." *Young v. Estate of Lapolito*, 20 Mass. L.Rep. 154, *4, 2005 WL 2864802, *2 (Mass.Super.Ct.2005) (citing *Fishman v. Alberts*, 321 Mass. 280, 72 N.E.2d 513 (1947)); *see also Bowers v. Board of Appeals*, 16 Mass.App.Ct. 29, 448 N.E.2d 1293, 1296 (1983) ("[Consent judgments] are a useful device to resolve disputes and are as much an adjudication for purposes of applying the principle of judgment preclusion as any other final judgment."). However, not all consent judgments satisfy the requirement that the issue to be precluded must have been actually litigated.

Restatement (Second) of Judgments § 27 (1982) provides that "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action be-

---

5. Courts following *Brown* and refusing to apply the doctrine of claim preclusion in dischargeability cases hold that because a cause of action arising under § 523 does not exist in the absence of a bankruptcy case, it is impossible for the cause of action to be litigated or raised in a prepetition, nonbankruptcy proceeding.

tween the parties whether on the same or a different claim." *Cousineau v. Laramee*, 388 Mass. 859, 863 n. 4, 448 N.E.2d 756 (1983); *Jarosz v. Palmer*, 436 Mass. 526, 530–531, 766 N.E.2d 482 (2002). However, comment e to § 27 of the Restatement provides that "in the case of a judgment entered by ... consent ... none of the issues is actually litigated." *Nonetheless, the consented to judgment "may be conclusive ... with respect to one or more issues, if the parties have entered an agreement manifesting such an intention."*

See *Turner v. Cmty. Homeowner's Ass'n, Inc.*, 62 Mass.App.Ct. 319, 816 N.E.2d 537 (2004) (emphasis added).

The agreement represents the intent of the parties as to the issues which will be precluded. *Pinshaw v. Metropolitan Dist[.] Com.*, 402 Mass. 687, 697 n. 14, 524 N.E.2d 1351 (1988). It serves as a waiver of all matters within the scope of that judgment. *Levy v. Crawford*, 33 Mass.App.Ct. 932, 933, 600 N.E.2d 597 (1992), citing *Kacouris v. Loukas*, 333 Mass. 44, 49, 127 N.E.2d 783 (1955). *Young*, 20 Mass. L. Rep. 154, at *2, 2005 WL 2864802, at *2. Thus, when considering a consent judgment founded upon an agreement of the parties, the court must examine the issue of "intention" when determining whether the "actually litigated" requirement of collateral estoppel has been fulfilled. *See Olson v. Dep't of Treasury (In re Olson)*, 170 B.R. 161, 167–68 (Bankr.D.N.D.1994). The intent of the parties can be inferred from the language of the judgment or the agreement. Accordingly, we look to the record to see what was actually litigated.

 Here, neither the language of the agreement for judgment, that of the related settlement agreement, nor any other evidence of record compels the conclusion that the parties intended that the judg-ment was not to be dischargeable or that the Debtor intended to be so bound on the issue of "actual fraud." Although the Debtor consented to the entry of judgment against him in the amount of $200,000, he specifically denied any liability whatsoever to Blacksmith. *See* Settlement Agreement at 1, ¶ F ("Woodford and MacSteel have denied that they have any liability whatsoever to Blacksmith"). As we read the agreement for judgment, the question of whether the Debtor intended to be bound by the state court judgment on the issue of actual fraud in any subsequent action is ambiguous given the Debtor's express denial of liability. As a result, we cannot conclude that the parties manifested the requisite intention that the agreement for judgment be conclusive, and preclusive, on the issue of actual fraud in a subsequent nondischargeability action.

Having concluded that the agreement for judgment is not entitled to preclusive effect on the issue of actual fraud for purposes of nondischargeability under § 523(a)(2)(A), we need go no further as Blacksmith has failed to meet its burden of proof under § 523(a)(2)(A). *See Spigel*, 260 F.3d at 32 (the party contesting the dischargeability of a debt bears the burden of showing that the debt comes squarely within an exemption from discharge).

### CONCLUSION

For the reasons set forth above, we **AFFIRM** the Order.